IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02215-REB-MJW
(Consolidated w/07-cv-01818-LTB-MJW)


CASEY B. FERRIS and
DAVID JOSEPH GARCIA,

Plaintiffs,

v.

JEFFERSON COUNTY,
TED MINKS, Jefferson County Sheriff, in his professional and personal capacity, and
ARA MARK, INC.,
AIRMART, INC., and
JOHN & JANE DOE (in their professional and personal capacity, 1-20)

Defendants.

---

## RECOMMENDATIONS ON
## (1) DEFENDANTS JEFFERSON COUNTY AND JEFFERSON COUNTY SHERIFF TED MINK'S COMBINED MOTION AND BRIEF TO DISMISS (Docket No. 43) and
## (2) DEFENDANT ARAMARK CORRECTIONAL SERVICES, LLC.'S MOTION TO DISMISS (Docket No. 47)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


        This consolidated case is before this court pursuant to an Order of Reference to

United States Magistrate Judge issued by District Judge Robert E. Blackburn on

May 15, 2008 (Docket No. 25).  Pursuant to a Minute Order issued by Judge Lewis T.

Babcock, Civil Action No. 07-cv-01818-LTB-MJW was consolidated with this case for all

purposes.  (Docket No. 35).

**Plaintiffs' Allegations**

Plaintiffs were pretrial detainees housed in the Jefferson County Detention Center ("JCDC"), and in very similar language in their separate Amended Prisoner Complaints (Docket No. 23 in 07-cv-02215-REB-MJW and Docket No. in ), they both allege Eighth Amendment violations when they and numerous other JCDC detainees/inmates became "deathly ill" from E. coli poisoning after consuming a meal on the evening of July 4, 2007, which was served by the facility's food service provider.[1]

Plaintiff Casey B. Ferris asserts the following in his pleading. On the evening of July 5, 2007, he was taken to the medical unit along with approximately sixty JCDC inmates/detainees and was quarantined until July 15 in an overflow unit where "victims" were housed without disclosure of the nature of the illness. Jefferson County continued to serve food and use the contaminated kitchen while he was quarantined.

Ferris raises two claims for relief: (1) "E-coli incident/poisoning" and (2) "Medical Malpractice." In the latter claim, Ferris avers that he "suffered the immediate effects of E-coli poisoning without adequate medical treatment by JCDC's medical provider: Medical staff provided plaintiff with broad-spectrum [sic] antibiotics ostensibly knowing, or should have known, that such treatment enhances the virality [sic] of the E-coli bacteria." (Docket No. 23 at 5). He claims he was never treated for E. coli poisoning and "is subject to long-term effects of E-coli poisoning, which are still medically unknown." (Docket No. 23 at 5). In addition, in Claim Two he avers that he was "pre-prescribed" Xanax for post traumatic stress syndrome and Ritalin for ADHD, yet JCDC's

---

[1]Plaintiff Ferris identifies this defendant as Air Mark, Inc. Plaintiff Garcia identifies this defendant as Airmart, Inc.

medical staff refuses to release those prescriptions from his jail property or provide the prescriptions from medical stores.

Ferris names Jefferson County; Ted Minkis, the Jefferson County Sheriff in his professional and personal capacity; and Ara Mark, Inc., as defendants. He seeks monetary damages, including exemplary/punitive damages.

Plaintiff David Joseph Garcia also raises two claims: (1) "Ecoli incident" and (2) "Medical Malpractise [sic] in Violation of Eighth Amendmant [sic]." In his first claim, Garcia asserts the following. On the evening of July 4, 2007, he "started feeling cramps and a fever. He advised the evening nurse - Jane Doe of his condition." (Docket No. 21 in 07-cv-01818-REB-MJW). At 11:30 p.m., he was called down to the medical facility, and medical staff (John/Jane Doe) took his temperature, pulse, and blood pressure. He was treated with Pepto Bismol and two Tylenol and then sent back to his cell. Medical staff failed to follow up to determine plaintiff's medical condition. The following day, July 5, Garcia slept through breakfast and lunch because he was not well enough to get up. He got out of bed at about 3:30 p.m. to use the restroom, and upon reaching the restroom, he suddenly began to vomit. Upon leaving the restroom area, he collapsed on the floor. Prior to blacking out, he saw blood all over the floor and believed he was throwing up blood. Upon regaining consciousness, he was aware of fellow inmates/detainees attending to him. There was no deputy on duty inside the pod. The inmates/detainees used the intercom for help. An ambulance arrived an undetermined time later, and the attendants began to administer medical treatment to Garcia. He was transported to Denver Health Medical Center on the evening of July 5, 2007, at about 5:00 p.m. He was treated and underwent various tests but was never

told by John/Jane Doe the nature of the tests, the results, or what he was being treated for at the hospital. He was released on approximately July 9 and returned to JCDC where he was placed in the Special Housing Unit ("SHU"). While in the SHU, Garcia was under observation by John/Jane Doe and received "oxicodone" for the chronic pain he experiences. He was released from the SHU on the evening of July 10 and returned to general population. He has not received "oxicodine" by medical staff John/Jane Doe or any other medication to treat the chronic pain he experiences since leaving the S.H.U. In addition, defendant food service provider Airmark, Inc., continued to serve "poisoned and polluted food" for approximately two weeks after discovery of the mass food poisoning. Garcia claims he suffered the immediate effects of E. coli bacteria poisoning and is also subject to the long-term effects, "which are still medically unknown." (Docket No. 21 at 9).

In his second claim, Garcia asserts the following. On May 5, 2007, he "kited" for pain medication to treat chronic pre-existing conditions, torn rotator cuffs in both shoulders and arthritis in his back. During the medical interview, he advised John/Jane Doe of his medical history which precluded use of Ibuprofen due to stomach ulcers. He has repeatedly requested "proper" medication daily from John/Jane Doe and defendant's medical staff and has repeatedly petitioned the medical department with official medical "kites" for proper treatment, to no avail. Due to chronic pain and suffering, he was forced to ingest Ibuprofen even though defendant's medical staff knew of the complications that medication would produce.

Garcia seeks monetary damages, including punitive and exemplary damages. He names Jefferson County, Airmark, Inc., and John/Jane Does 1-20 as defendants.

**Defendants' Motions to Dismiss**

Now before the court for report and recommendation are the following two dispositive motions: (1) Defendants Jefferson County and Jefferson County Sheriff Ted Mink's Combined Motion and Brief to Dismiss (Docket No. 43) and (2) Defendant ARAMARK Correctional Services, LLC.'s Motion to Dismiss (Docket No. 47). Plaintiff Garcia filed a two-page response (Docket No. 60), and Replies were filed in further support of the two motions (Docket Nos. 61 and 62). Plaintiff Ferris did not file a response to either motion. The court has very carefully considered the motions, the response, the replies, the court's file, and applicable case law and Federal Rules of Civil Procedure. The court now being fully informed makes the following findings, conclusions, and recommendations.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiffs are not attorneys, their pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendants Jefferson County and Jefferson County Sheriff Mink (collectively "the County defendants") move to dismiss the claims asserted against them in the two Amended Prisoner Complaints on the following grounds: (1) a single incident of food poisoning is insufficient to state a constitutional claim; (2) plaintiffs have failed to state a claim for deliberate indifference to a serious medical need; (3) plaintiffs' claims are

barred by the lack of any physical injury; (4) plaintiff Garcia's Eighth Amendment claim for contracting E. coli is barred due to his failure to exhaust administrative remedies; (5) Jefferson County is not responsible for the day-to-day running of the JCDC, and the court should dismiss all claims alleged against Jefferson County; (6) plaintiff Ferris' individual capacity claim against the Sheriff must be dismissed; and (7) both Complaints improperly name Jefferson County as a party.

Plaintiff Garcia responds that the motion should be denied "due to the simple fact if an E coli outbreak and or Incident were to occur outside of prison, the Incident would be taken seriously and the Incident would be fully Investigated. All Parties Involved would be held responsible and accountable and the defendants should be held to the same standards and scrutiny that apply to any other business and or Indivigual [sic] outside of Jail. Maybe even to a higher degree due In fact to there [sic] custodial positions and responsibilities and duties of public office." (Docket No. 60 at 1). Garcia also asserts that "Jail personel [sic] have acted with deliberate Indifference, due to the fact that not once have they denied any allegations nor have they shown the court that they have taken steps to Insure that food is properly prepared to avoid another Incidence such or this will not happen again." (Docket No. 60). He also contends that "Medical Staff has provided treatment that is detrimental to the plaintiffs [sic] health by prescribing medication known to aggravate plaintiffs [sic] medical condition (bleeding ulcers). (Docket No. 60-2).

Defendant ARAMARK Correctional Services, LLC ("ARAMARK"), which says it was improperly named ARA MARK Inc. in the Amended Complaint, moves to dismiss

Ferrris' Amended Complaint[2] on the following grounds: (1) plaintiff fails to allege any facts that establish any liability on the part of ARAMARK, a private corporation and (2) ARAMARK was not acting under color of state law during its contract with JFDC.

Plaintiffs claim that their Eighth Amendment rights were violated. "Although pretrial detainees like plaintiff[s] are protected under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, courts apply an analysis identical to that applied in Eighth Amendment cases in determining whether a detainee's rights were violated." Schaal v. Fender, 2007 WL 2461642 (D. Colo. Aug. 27, 2007). See Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement . . . , the Eighth Amendment standard provides the benchmark for such claims."). "[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id.

"To establish deliberate indifference, a prisoner must demonstrate more than

---

[2]In its Reply (Docket No. 62) ARAMARK states that it has never been served with any Complaint in 07-cv-01818. It was unaware of Garcia's action until the cases were consolidated. Nevertheless, it adopts and incorporates the arguments contained in its Motion to Dismiss Plaintiff Ferris' Amended Complaint for plaintiff Garcia's claims since both of plaintiffs' claims against it are identical.

mere negligence; a negligent failure to provide adequate medical care, even one constituting medical malpractice, does not rise to the level of a constitutional violation."

Alejo v. Gonzalez, 2000 WL 64317, *1 (10th Cir. Jan. 26, 2000).  See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Glick v. Romer, 2000 WL 328127 (10th Cir. Mar. 29, 2000).  Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. at 106.  "The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'"  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. . . .  Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

This court agrees with the County defendants that the plaintiffs' claims concerning the single incident of food poisoning should be dismissed.  "[A] single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners."  George v. King, 837 F.2d 705, 707 (5th Cir. 1988); Thomas v. Rayburn Correctional, 2008 WL 417759 (E.D. La. Feb. 13, 2008).  See Watkins v. Trinity Serv.

Group Inc., 2006 WL 3408176 (M.D. Fla. Nov. 27, 2006) ("Since [plaintiff's] alleged food poisoning and maggot incident were independent and isolated events, they were not sufficiently serious deprivations to violate his constitutional rights."); Bennett v. Misner, 2004 WL 2091473, *20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation."), aff'd, 180 Fed. Appx. 732 (9th Cir. May 18, 2006); Seymour/Jones v. Oldt, 1990 WL 29721 (E.D. Pa. Mar. 16, 1990) ("[S]ingle instance of unintentional instance of food poisoning, which, though undoubtedly unpleasant, does not rise to the level of a violation of his civil rights.").

At most, plaintiffs' claims of food poisoning are based on negligence, and thus they are not cognizable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986). Furthermore, both plaintiffs received medical care for the food poisoning. While plaintiffs do not necessarily agree with the treatment provided, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999). Plaintiffs also alleged medical malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106. In sum, this court finds that the plaintiffs have failed to state a claim upon which relief can be granted with respect to their food poisoning claims. Even though defendant ARAMARK did not raise this ground for relief, the claims against it may be dismissed sua sponte pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) ("the court shall dismiss the case at any time if the court determines that - . . . the action

. . . fails to state a claim on which relief may be granted . . . .").  There is thus no need to

address defendants' other arguments for dismissal of these claims.

The only claims remaining concern both plaintiffs' claims that they have been

denied certain medications.  In his second claim, Ferris claims that he has been

prescribed Xanax for post traumatic stress syndrome and Ritalin for ADHD, yet JCDC's

medical staff refuses to release these medications or provide them from medical stores.

Ferris, however, has named as defendants only Jefferson County; Ted Minkis, the

Jefferson County Sheriff in his professional and personal capacity; and Ara Mark, Inc.

He has not named any medical staff who were allegedly personally involved in these

acts on unspecified times/dates.  Somewhat similarly, Garcia asserts in his second

claim that he has been given Ibuprofen for torn rotator cuffs and arthritis in his back

even though that medication is contraindicated due to stomach ulcers.  He has allegedly

repeatedly requested "proper" medication daily from John/Jane Doe and defendant's

medical staff and repeatedly petitioned the medical department with official medical

"kites" for proper treatment, to no avail.  In his action, Garcia names as defendants

Jefferson County, Airmark, Inc., and John/Jane Does 1-20.

The County defendants correctly assert that both the Ferris and Garcia Amended

Prisoner Complaints improperly name Jefferson County as a party because pursuant to

§ 30-11-105, C.R.S., all actions brought against a county in Colorado are required to

name the "Board of County Commissioners of the County of _____" as the proper party,

not Jefferson County.  Therefore, plaintiffs' claims against Jefferson County should be

dismissed as improper.  <u>See</u> <u>Gonzales v. Martinez</u>, 403 F.3d 1179, 1182 n.7 (10th Cir.),

<u>cert. denied</u>, 546 U.S. 1003 (2005); <u>Green v. Post</u>, 2008 WL 707338 (D. Colo. Mar. 14,

2008); <u>Grady v. Jefferson County, Colo.</u>, 2008 WL 178923 (D. Colo. Jan. 17, 2008).

Even if plaintiffs were to amend their pleadings yet again so as to name the Board of County Commissioners of the County of Jefferson, the County may be held liable under § 1983 "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." <u>Lopez v. LeMaster</u>, 172 F.3d 756, 762-63 (10th Cir. 1999). Plaintiffs have not alleged any unconstitutional or illegal policies by the County. They merely allege improper acts by unnamed medical staff. Furthermore, as asserted by the County defendants, Jefferson County is not responsible for the day-to-day running of the JCDC; the Sheriff is solely responsible for the hiring and firing of Deputy Sheriffs. <u>See</u> <u>Bristol v. Board of County Comm'rs of County of Clear Creek</u>, 312 F.3d 1213, 1219 (10th Cir. 2002). Therefore, plaintiffs' claims against Jefferson County should be dismissed.

In addition, this court also recommends dismissal of plaintiff Ferris' claim against the Sheriff inasmuch as Ferris has not alleged any personal involvement by this defendant. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who

2008); <u>Grady v. Jefferson County, Colo.</u>, 2008 WL 178923 (D. Colo. Jan. 17, 2008).

Even if plaintiffs were to amend their pleadings yet again so as to name the Board of County Commissioners of the County of Jefferson, the County may be held liable under § 1983 "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." <u>Lopez v. LeMaster</u>, 172 F.3d 756, 762-63 (10th Cir. 1999). Plaintiffs have not alleged any unconstitutional or illegal policies by the County. They merely allege improper acts by unnamed medical staff. Furthermore, as asserted by the County defendants, Jefferson County is not responsible for the day-to-day running of the JCDC; the Sheriff is solely responsible for the hiring and firing of Deputy Sheriffs. <u>See</u> <u>Bristol v. Board of County Comm'rs of County of Clear Creek</u>, 312 F.3d 1213, 1219 (10th Cir. 2002). Therefore, plaintiffs' claims against Jefferson County should be dismissed.

In addition, this court also recommends dismissal of plaintiff Ferris' claim against the Sheriff inasmuch as Ferris has not alleged any personal involvement by this defendant. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who

actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).  Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Here, the only mention of the sheriff in Ferris's Amended Prisoner Complaint is under the Parties section in which plaintiff names the sheriff and states:  "Chief executive officer in the County is responsible for all people incarcerated within the County.  He is operating in Color of state law even when his actions or those of his employee's violate clearly established law by their acts or omissions."  (Docket No. 23 at 2).  "An individual defendant [however] may not be held liable on a theory of respondeat superior merely because of his or her supervisory position."  Sanderson v. City of Aurora, 2008 WL 2037808, *2 (D. Colo. May 9, 2008) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); McKee v. Heggy, 703 F.2d 479, 483 (10th Cir.

1983)). Ferris has not alleged an affirmative link between the Sheriff and the alleged violation. Therefore, defendant Sheriff Mink should be dismissed as a party to Ferris' action for lack of personal participation.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Jefferson County and Jefferson County Sheriff Ted Mink's Combined Motion and Brief to Dismiss (Docket No. 43) be granted, that the Amended Prisoner Complaints against defendant ARAMARK be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), and that Defendant ARAMARK Correctional Services, LLC.'S Motion to Dismiss (Docket No. 47) be denied as moot. The only claims remaining would be plaintiff Garcia's claim against John/Jane Does 1-20.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: September 22, 2008
     Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge